UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
*********************************************************
GERALD MALLISON,                          *     CIVIL NO.
            Plaintiff                     *
                                          *
v.                                        *
                                          *
                                          *
CONNECTICUT OFFICE OF EARLY               *
CHILDHOOD AND COMMISSIONER                *
BETH BYE IN HER INDIVIDUAL CAPACITY,      *
            Defendants                    *     December 10, 2020
*********************************************************
```

## COMPLAINT

**FIRST COUNT**: [42 U.S.C. §2000e, et.seq.]

1. This is an action for money damages and injunctive relief to redress the deprivation by the defendants, through their agents, servants and/or employees of the rights secured to the plaintiff by the Constitution and laws of the United States, as well as those of the State of Connecticut. The defendants, through their agents, servants and/or employees, were responsible for violating plaintiff's federal and state statutory rights, and thereby improperly deprived him the freedom and liberty afforded to all citizens of this state and country, without cause, justification or excuse.

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C §1331 and 1343, 42 U.S.C. §2000e, *et.seq.*, the Civil Rights Acts of 1964 and 1991, as amended, ("Title VII" thereof) and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §621-634 and Article 1, Section 1 of the Connecticut Constitution which confers pendent

jurisdiction upon this Court with respect to any cause of action under state law, including but not limited to Connecticut General Statutes §§46a-60(a) 1 and 4.

3. The plaintiff is Gerald Mallison, ("Mallison" or "plaintiff") who is African American of race, black of color and male of gender and during all times mentioned herein was a citizen of the United States, residing within the county of New Haven, city of New Haven and state of Connecticut.

4. The defendant is the state of Connecticut's Office of Early Childhood ("OEC" or "defendant") which employs well over 100 persons and which has a mission of coordinating and improving the various early childhood programs and components throughout the state in order to create a cohesive high-quality early childhood development system.

5. The defendant was established in 2013 in an effort to better support all young children in their development by ensuring that early childhood policy, funding, and services strengthen the critical role families, providers, educators and communities play in each child's life throughout the state of Connecticut.

6. On or about September 21, 2013, the plaintiff was hired as an Accounts Examiner at the Department of Social Services, Office of Quality Assurance, in the Division of Internal Audit, for the state of Connecticut. Prior to that, Mallison had over twenty (20) years of fiscal administrative management experience.

7. In or about June 29, 2018, the plaintiff was promoted to the position of Fiscal Administrative Supervisor ("FAS") at the OEC. Of note is the fact that out of more than 100 employees in the OEC's Fiscal Division, Mallison is the only African American male.

8. Almost immediately upon arrival, Mallison was confronted with open hostility from one of his direct subordinate reports, namely Sarah Poulin, ("Poulin"), who held the title of Associate Fiscal Administrative Officer. Poulin is white of color, Caucasian of race, and female of gender.

9. Poulin, who had applied for the Fiscal Administrative Supervisor's position, to which plaintiff was promoted, was resentful that Mallison, rather than she, got the job.

10. Although Poulin was tasked with providing support and administrative assistance to the plaintiff, she took every opportunity to undermine his efforts at being successful in his FAS position. In fact, Poulin actually admitted to the plaintiff that it was in her interest for him to fail.

11. As time went on, Poulin's animus towards Mallison intensified, which became readily apparent through her in-person communications, as well as in her emails. Mallison attempted to avoid her for fear that she would engineer his professional sabotage. By way of example, Poulin would feed plaintiff false fiscal information, and then conspicuously correct the very information she had provided to him in office meetings in an effort to cast him in an unfavorable light.

12. In or about October 2018, the OEC's previous Fiscal Administrative Manager was terminated for not being able to successfully complete his working test period. Mallison was then asked to not only perform the duties of his job as a Fiscal Administrative Supervisor, but also take on the responsibility of the Fiscal Administrative Manager who had just been dismissed from state service.

13. In January of 2019, a new Commissioner was appointed by the governor to oversee OEC, who was Beth Bye, ("co-defendant" or "Commissioner") who is white of color,

Caucasian of race and female of gender. The commissioner is being sued in her individual capacity.

14. During the subsequent month (February 2019), the plaintiff was forced to miss approximately four (4) weeks of work, due to his breaking his ankle. Throughout this time, Poulin began to plant seeds of distrust and discord in the minds of the Commissioner and the Commissioner's Chief Operating Officer ("COO"), Chris Lyddy, ("Lyddy"), regarding plaintiff's job performance, as well as his character. Lyddy is white of color and Caucasian of race.

15. Upon Mallsion's return to the office in March of 2019, he resumed his job responsibilities only to be met with emails from Poulin which were laced with anger, hostility, and unmitigated animus, to the point where Mallison concluded that he simply could not continue to communicate with her. Poulin actively created, perpetrated and fostered a hostile work environment within OEC's Fiscal Division, to the point where Mallison believed it would be less stressful for him to avoid communicating with her altogether.

16. On those rare occasions when plaintiff had had enough and confronted Poulin about her disrespectful and confrontational attitude, the new COO of the Department, Lyddy, would, instead of supporting him, reprimand Mallison for being too hard of her. Lyddy was Mallison's direct supervisor.

17. In June of 2019, the vacant Fiscal Administrative Manager position, (the job plaintiff had been tasked with performing, in addition to his Fiscal Administrative Supervisor position) was posted.

18. Although the posting for the FAM2 position was clear and unambiguous regarding the necessary prerequisite qualifications, it became obvious that some who were interested in the position did not meet the threshold qualifications, such as Poulin, who was only an Associate Fiscal Administrative Officer.

19. Strangely, the posting for the FAM2 position was subsequently revised, *reducing* the minimum qualifications from requiring working experience as a Fiscal Administrative Supervisor (which Mallison was), to that of only requiring one to have experience as a budget specialist. OEC also intentionally eliminated the vetting step of reviewing applications for minimum qualifications.

20. In February of 2020, the interviews for the FAM2 position began, which were conducted by Lyddy. Plaintiff, with more than twenty (20) years of fiscal administrative experience and having worked as an acting FAM for the last year and a half, failed to make it out of the very first round of interviews.

21. In May of 2020, Commissioner Bye contacted the plaintiff directly to inform him that not only was he not going to get the coveted position he had been performing for the last year and a half, but that none other than his *former direct report*, Poulin, would now be his immediate supervisor, as she was the successful candidate for the FAM2 position!

22. Mallison subsequently learned that Lyddy had quite discriminatorily suggested to the interviewing panel members that plaintiff had "misrepresented" his work experience and qualifications during the interview.

23. The OEC, through its management, including Commissioner Bye, has allowed Mallison to be subjected to a hostile work environment, disparate treatment, and

6

ongoing harassment, while all the while turning a blind eye to the outright racial animus that was consistently directed at him in an overt effort to undermine his professional stature within the OEC.

24. The manipulation of the posting for the FAM2 position, under the auspices of Commissioner Bye, by reducing the qualifications for the position, so as to allow the preferred candidate, Poulin, to become eligible to sit for an interview, and ultimately be promoted to the FAM2 position, was a blatantly deceptive, nefarious, and discriminatory method of circumventing basic fairness and equality in the workplace, and an egregious breach of the civil rights of the plaintiff.

25. The promotion of Poulin to the FAM2 position, and now requiring Mallison to report to the very person who successfully set out to sabotage and undermine his professional standing within the OEC, coupled with its passing him over for the FAM2 position, was a blatant violation of his statutory rights afforded to him by Title VII of the Civil Rights Act, 42 U.S.C §2000e *et. seq.*

26. On or about November 30, 2021 the United States Equal Employment Opportunity Commission ("EEOC") issued a Right to Sue letter to the plaintiff, enabling him to seek full legal redress in this forum.

## SECOND COUNT: [ 42 U.S.C. §§ 1981 and 1983 ]

1-24. Paragraphs 1-24 of the First Count are hereby incorporated by reference and made paragraphs 1 through 24 of the Second Count, as if fully set forth therein.

25. The acts of the co-defendant, Commissioner Bye, were discriminatory and harassive in nature in that, but for the plaintiff's race and/or color, they would not

have occurred and therefore, were in violation of his federal statutory rights as provided by 42 U.S.C §§1981 and 1983.

## THIRD COUNT: [ §§46A-60(a) 1 and 4]

1-24. Paragraphs 1-24 of the First Count are hereby incorporated by reference and made Paragraphs 1 through 24 of the Third Count, as if fully set forth herein.

25. The promotion of Poulin to the FAM2 position, and now requiring Mallison to report to the very person who successfully set out to sabotage and undermine his professional standing within the OEC, coupled with passing him over for the FAM2 position, was a blatant violation of his state statutory rights afforded to him by Connecticut General Statutes §§46a-60(a) 1 and 4.

## FOURTH COUNT:  [29 U.S.C.§§621 - 634]

1-24. Paragraphs 1-24 of the First Count are hereby incorporated by reference and made Paragraphs 1-24 of the Third Count as if fully set forth herein.

25. Plaintiff's date of birth is December 15, 1961, which makes him presently 59 years of age.

26. Poulin, upon information and belief, is in her early thirties.

27. The disparate treatment and discrimination the plaintiff suffered, as aforedescribed, was due to his age, as the management of OEC clearly showed preferential treatment toward Poulin in promoting her to the FAM2 position over him when, in point of fact, he was more qualified, in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C §§621-634.

8

WHEREFORE, the plaintiff claims against the defendants, for their acts, through its agents, servants and/or employees, as follows:

    a. Compensatory damages in the amount of no less than One Million Dollars ($1,000,000);

    b. Attorney's fees and the reimbursement of costs associated with the bringing of the instant action;

    c. Permanent injunctive relief to prevent the OEC from further engaging in the aforedescribed ongoing discriminatory, disparate and harassive conduct in violation of the plaintiff's federally and state statutorily protected civil rights; and

    d. Such other relief as this Court, in its sound discretion, shall consider to be just, fair and equitable.

PLAINTIFF, GERALD MALLISON

BY: _____
Law Office of
W. Martyn Philpot, Jr., LLC
409 Orange Street
New Haven, CT 06511-6406
Tel. No. (203) 624-4666
Federal No. ct05747
His Attorneys

The plaintiff hereby requests a trial by jury.