## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GERALD MALLISON,<br>    *Plaintiff*, | ) | 3:21-CV-1641-SVN |
| | ) | |
| v. | ) | |
| | ) | |
| CONNECTICUT OFFICE OF EARLY | ) | |
| CHILDHOOD and COMMISSIONER | ) | October 11, 2022 |
| BETH BYE in her individual capacity, | ) | |
|     *Defendants*. | ) | |

## <u>RULING AND ORDER ON DEFENDANTS' MOTION TO DISMISS</u>

Sarala V. Nagala, United States District Judge.

Gerald Mallison ("Plaintiff") has brought this action against the Connecticut Office of Early Childhood ("OEC") and its commissioner, Beth Bye (collectively "Defendants"), pursuant to 42 U.S.C. § 2000e, *et seq*. ("Title VII"), 42 U.S.C. §§ 1981 and 1983, Connecticut General Statutes §§ 46A-60(a)1 and 4 ("CFEPA"), and 29 U.S.C. §§ 621–34 ("ADEA"), claiming that Defendants unlawfully discriminated against him based on his race and age.

Presently before the Court is Defendants' motion to dismiss the complaint in its entirety. Defendants contend that, as to certain claims, Plaintiff's complaint fails to state any claim upon which relief can be granted, and, as to others, the Court lacks subject matter jurisdiction. Plaintiff counters that his complaint adequately states claims against both Defendants under various statutes, and that Defendants' contentions otherwise are incorrect.

For the reasons described below, the Court grants in part Defendants' motion to dismiss. All claims except for Plaintiff's Title VII failure to promote claim are dismissed. Plaintiff shall be permitted to file a motion for leave to amend his complaint.

## I.      FACTUAL BACKGROUND

The following facts, taken from the complaint, are presumed to be true for the purposes of the present motion to dismiss.[1]  Plaintiff is an African American male who was hired in September of 2013 as an accounts examiner at the Connecticut Department of Social Services, Office of Quality Assurance, in the division of Internal Audit.  Compl., ECF No. 1, ¶¶ 3, 6.  Despite OEC employing more than one hundred employees in its fiscal division, Plaintiff is the only African American male.  *Id.* ¶ 7.  After working there for nearly five years, in June of 2018, Plaintiff was promoted to the position of fiscal administrative supervisor.  *Id.*  Almost immediately after being promoted, Plaintiff began to experience hostility from one of his direct subordinates, Sarah Poulin.  *Id.* ¶ 8.  Poulin is a white female who was resentful of Plaintiff because she, too, had applied for the FAS role, but had been passed over when the position was given to Plaintiff.  *Id.* ¶¶ 8, 9.

As a result, although she was supposed to be providing support and administrative assistance to Plaintiff, Poulin instead attempted to undermine him at every turn.  *Id.* ¶ 10.  At one point, Poulin even told Plaintiff that it was in her best interest if he were to fail.  *Id.*  As time passed, Poulin's dislike for Plaintiff became more and more pronounced in both her email and in-person communications.  *Id.* ¶ 11.  For example, Poulin provided Plaintiff certain financial information, only to correct that very information during meetings in an effort to make Plaintiff look bad.  *Id.*  Eventually, Plaintiff made the decision to avoid Poulin altogether in an effort to prevent her from sabotaging his career.  *Id.*

In October of 2018, a fiscal administrative manager at OEC was terminated.  *Id.* ¶ 12.  At that time, Plaintiff was asked to take on the responsibilities of that position, in addition to the

---

[1] Where a defendant moves to dismiss under either Rule 12(b)(1) or Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept all factual allegations in the complaint as true, and draw inferences from those allegations in the light most favorable to the plaintiff.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006).

responsibilities of the fiscal administrative supervisor role that he already held. *Id.* In January of 2019, Defendant Bye, a white woman, was hired to be the Commissioner of OEC. *Id.* ¶ 13. In February of 2019, Plaintiff suffered a broken ankle and was forced to miss approximately four weeks of work. *Id.* ¶ 14. During this time that Plaintiff was absent from work, Poulin attempted to "plant seeds of distrust and discord" in the minds of Bye and Plaintiff's direct supervisor, Chris Lyddy, who was Bye's Chief Operating Officer. *Id.* Upon Plaintiff's return to the office, Poulin's actions got progressively worse, including the sending of emails Plaintiff characterizes as containing "anger, hostility, and unmitigated animus." *Id.* ¶ 15. Eventually, Poulin created such a negative environment for Plaintiff that he concluded he simply could not continue to communicate with her. *Id.* On certain rare occasions, Plaintiff confronted Poulin about her actions. *Id.* ¶ 16. When he did this, Lyddy told Plaintiff to stop being so hard on Poulin. *Id.*

In June of 2019, OEC began searching for someone to fill the vacant fiscal administrative manager position, which Plaintiff had been unofficially performing for months. *Id.* ¶ 17. The original job posting contained the qualifications required to apply for the position. *Id.* ¶ 18. According to the complaint, it quickly became clear that some interested parties, specifically Poulin, did not meet those requirements. *Id.* The necessary qualifications to apply for the position were subsequently reduced, thus clearing the way for other applicants, including Poulin. *Id.* ¶ 19. OEC also removed the preliminary step of making sure the applications submitted in fact met the minimum qualifications required for the position. *Id.*

In February of 2020, Lyddy began conducting interviews for the fiscal administrative manager position. *Id.* ¶ 20. Despite having more than twenty years of fiscal administrative experience, and despite having worked as the acting fiscal administrative manager for nearly a year and a half at that point, Plaintiff failed to advance past the first round of interviews. *Id.* In

May of 2020, Bye informed Plaintiff that not only had he been denied the position, but that Poulin, his former direct report, had been awarded the position and would be his new supervisor. *Id.* ¶ 21. Plaintiff subsequently learned that Lyddy had told the panel conducting the interviews that Plaintiff had "misrepresented" his qualifications and work experience during the interview. *Id.* ¶ 22.

Plaintiff believes that, through these actions, Defendants have discriminated against him based on both his age and race in violation of federal and state law.

## II.   LEGAL STANDARDS GOVERNING DISMISSAL UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)

### A.   Federal Rule of Civil Procedure 12(b)(1)

Pursuant to Federal Rule of Civil Procedure 12(b)(1), defendants may move to dismiss a case for lack of subject matter jurisdiction. A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Because the Eleventh Amendment "restricts the judicial power under Article III," *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 72–73 (1996), a motion to dismiss on the basis of sovereign immunity under the Eleventh Amendment is properly brought under Rule 12(b)(1), *Long Island Pure Water Ltd. v. Cuomo*, 375 F. Supp. 3d 209, 215 (E.D.N.Y. 2019).[2]

Although it is usually the plaintiff's burden to prove subject matter jurisdiction, "where a defendant official or governmental entity asserts the Eleventh Amendment as the basis of [a] 12(b)(1) motion, the burden falls to that entity" to establish that it is an arm of the state such that

---

[2] Neither the Second Circuit nor the Supreme Court has definitively determined whether the Eleventh Amendment is to be understood as a bar to subject matter jurisdiction or is "more appropriately viewed as an affirmative defense." *Ripa v. Stony Brook Univ.*, 808 F. App'x 50, 50 n. 1 (2d Cir. 2020). *See also Aldridge v. Lamont*, No. 3:20-cv-924 (KAD), 2020 WL 7773415, at *4, n. 6 (D. Conn. Dec. 30, 2020). While the Court believes that the opening phrase of the Eleventh Amendment, which provides that the "judicial power of the United States shall not be construed to extend" to certain suits, suggests that the Amendment limits the subject matter jurisdiction of the Court, it need not and does not decide this question here. Regardless of which view of the Eleventh Amendment applies, certain of Plaintiff's claims are barred under it.

it may be entitled to sovereign immunity.  *See Perez v. Conn. Dep't of Corr. Parole Div.*, No. 3:13-CV-150 JCH, 2013 WL 4760955, at \*2 (D. Conn. Sept. 4, 2013) (citing *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 239 (2d Cir. 2006)).  Still, consistent with a plaintiff's ultimate burden of establishing subject matter jurisdiction, once an entity has shown that it is an arm of the state, the plaintiff bears the burden of establishing that an exception to sovereign immunity applies.  *See MMA Consultants 1, Inc. v. Republic of Peru*, 245 F. Supp. 3d 486, 497–98 (S.D.N.Y.), *aff'd*, 719 F. App'x 47 (2d Cir. 2017) ("The ultimate 'burden of proving subject matter jurisdiction by a preponderance of the evidence' lies with the plaintiff.") (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)).

Here, the parties do not dispute that OEC is an arm of the state.  Accordingly, in discussing whether sovereign immunity applies to Plaintiff's claims, the Court will examine whether Plaintiff has met his burden of proving that any exception to sovereign immunity applies.

## B. Federal Rule of Civil Procedure 12(b)(6)

When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully."  *Id.*  In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and

determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).

However, the Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678. Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III.   DISCUSSION

In the instant motion, Defendants assert a wide array of arguments they believe entitle them to dismissal of the complaint. In its discussion, the Court will first examine certain initial procedural arguments, before turning to the merits of Plaintiff's claims.

### A.   Procedural Matters

#### 1.   Consideration of Extrinsic Evidence

In opposition to Defendants' motion to dismiss, Plaintiff has submitted eleven separate exhibits, totaling approximately eighty pages in length. *See* ECF Nos. 19-2–19-12. In their reply memorandum, Defendants argue that the Court should not consider these exhibits because they are extrinsic to the complaint and the Court's examination of them in the context of a motion to dismiss would be improper. ECF No. 21 at 1–5. After requesting and receiving leave to file a surreply, Plaintiff argues that his evidence should be considered because it is "proper and relevant" to his complaint. ECF No. 24 at 1. Before it can examine the merits of the instant action, the Court must therefore determine what material it is allowed to consider during that examination.

In ruling on a motion under Rule 12(b)(6), a court is normally required "to look only to the allegations on the face of the complaint." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). But, in certain circumstances, a court "may permissibly consider documents other than the complaint." *Id.* Specifically, "documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." *Id.*; *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) ("the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference"). Further, "even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Chambers*, 282 F.3d at 152 (internal quotations omitted).

Here, Plaintiff has submitted the complaint he filed with the Connecticut Commission on Human Rights and Opportunities ("CHRO"), an affidavit he has signed, the job posting for the fiscal administrative manager position, Plaintiff's application for the position, a list of other applicants for the position, and various email exchanges both including and not including Plaintiff. None of these documents were appended, or incorporated by reference, into the complaint. The question for the Court is what, if any, of this information is integral to the complaint.

Initially, Defendants concede that the CHRO complaint is integral to Plaintiff's complaint, so the Court will consider that document, to the extent necessary to resolve the pending motion. ECF No. 21 at 1. In order for any of the remaining materials to be considered integral to the complaint, Plaintiff must have "rel[ied] on the terms and effect of the document in drafting the complaint." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006). It is not enough that Plaintiff had "mere notice or possession" of the documents. *Id.* Further, "it is well established that [p]laintiffs cannot amend their complaint by asserting new facts or theories

for the first time in opposition to Defendants' motion to dismiss." *Miley v. Hous. Auth. of City of Bridgeport*, 926 F. Supp. 2d 420, 432 (D. Conn. 2013) (internal quotations and citations omitted); *see also Schulz v. Medtronic, Inc.*, No. 3:21-CV-00414 (MPS), 2022 WL 503960, at *2 (D. Conn. Feb. 18, 2022) (refusing to consider facts put forth by the plaintiff for the first time in opposition to a motion to dismiss).

The Court will not consider the exhibits submitted by Plaintiff in connection with the present motion to dismiss.[3] Plaintiff was free to specify in detail the contents of the exhibits when drafting the complaint, and he chose not to do so. As it does not appear that Plaintiff relied upon the "terms and effect" of the exhibits when drafting his complaint, they are not integral to the complaint, such that they should be considered in ruling on Defendants' motion to dismiss. *See Glob. Network Commc'ns, Inc.*, 458 F.3d at 156. Plaintiff's effort to bolster his complaint with further factual information not included in the complaint itself is not permissible. *Miley*, 926 F. Supp. 2d at 432; *Schulz*, 2022 WL 503960, at *2. Thus, the Court will consider only Plaintiff's complaint and the CHRO complaint in deciding the instant motion.

### 2. *Time Bar*

Defendant also argues that certain allegations in Plaintiff's complaint are time barred because they occurred more than three hundred days before Plaintiff filed his charge with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff contends all the claims are timely as he alleges only a single act of unlawful discrimination, the failure to promote him. ECF No. 19 at

---

[3] As Defendants' 12(b)(1) motion raises a facial, rather than a fact-based, challenge to the complaint, and because it is *Plaintiff*, not Defendants, who is requesting that the Court take into consideration materials outside of the complaint, the Court will not consider the exhibits for purposes of addressing either Defendants' Rule 12(b)(6) or 12(b)(1) motions. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (describing differences between facial and fact-based subject matter jurisdiction challenges); *Roth*, 489 F.3d at 509.

7.  He contends the remaining allegations are either background information or support for the ongoing hostile work environment suffered by Plaintiff.  The Court agrees.

Prior to filing a complaint in federal court, a plaintiff must submit a complaint to the EEOC or equivalent state agency.  42 U.S.C. § 2000e-5; *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006).  If a claim is submitted to a state agency prior to the EEOC, the claim must be submitted to the EEOC within 300 days of the alleged discriminatory action.  42 U.S.C. § 2000e-5.  This requirement is "analogous to a statute of limitations" and, thus, any discriminatory action that took place more than 300 days prior to the filing of a plaintiff's EEOC complaint is time barred.  *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996).  Here, Plaintiff first initiated proceedings with the CHRO before filing his EEOC complaint on June 1, 2020, which means any discrete discriminatory acts that took place prior to August 6, 2019, are time barred.

Plaintiff makes clear that he alleges only a single discrete act of discrimination, the failure to promote him.  This action took place on May 12, 2020, a mere twenty days prior to Plaintiff's EEOC complaint.  ECF No. 19 at 8–9.  This claim for discrimination is clearly not time barred, and Defendants do not seriously contend otherwise.

Plaintiff also alleges a hostile work environment claim.  Such a claim is not a discrete act but, rather, "involves repeated conduct."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002).  Therefore, it does not matter if "some of the component acts of the hostile work environment fall outside the statutory time period.  Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."  *Id.*  With these principles in mind, the Court turns to examine whether any of Plaintiff's claims are time barred.

The allegations that Defendants contend are time barred include several actions taken by Poulin and others that Plaintiff alleges are part of his hostile work environment claim. These include: Poulin providing him with false information to make him look bad; Poulin "planting seeds of distrust and discord" while Plaintiff was out of work with an injury; Poulin's emails laced with anger and hostility; and Lyddy's reprimand of Plaintiff for being "too hard on" Poulin. Compl. ¶¶ 11, 14, 15, 16. Plaintiff further alleges that promoting Poulin to a position where Plaintiff would be reporting directly to her contributed to this hostile work environment. *Id.* ¶ 25. As this final act took place after August of 2019, all prior acts related to Plaintiff's hostile work environment claim are appropriately considered. Thus, none of the claims or allegations in the present action are time barred and the Court will consider each of the allegations in deciding the present motion.

### B. Title VII Claims[4]

Plaintiff is pursuing two distinct claims under Title VII: discrimination based on his race and hostile work environment. Defendants move to dismiss both claims. For the reasons discussed below, the Court denies Defendants' motion to dismiss the race discrimination claim, but grants it as to the hostile work environment claim.

#### 1. Race Discrimination

The crux of Plaintiff's complaint is that Defendants refused to promote him based on his race. In order to state a claim for discriminatory failure to promote, Plaintiff must show "(1) [he] is a member of a protected class; (2) [he] applied and was qualified for a job for which the employer was seeking applicants; (3) [he] was rejected for the position; and (4) the position remained open

---

[4] While the complaint does not make clear which claims are alleged against which Defendants, Title VII does not allow for individual liability. *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004). Therefore, the Court will construe the Title VII claims as alleged against OEC only.

and the employer continued to seek applicants having the plaintiff's qualifications." *Petrosino v. Bell Atl.*, 385 F.3d 210, 226 (2d Cir. 2004) (internal quotations omitted).  Further, as in all Title VII cases, "there must be proof that the plaintiff was rejected under circumstances which give rise to an inference of unlawful discrimination." *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 80 (2d Cir. 2009).

Here, Defendants do not dispute that Plaintiff is a member of a protected class, that he applied and was qualified for the position at issue, that he was rejected for the position, and that the position was left open and ultimately filled by someone else.  Thus, the only question raised for this Court to decide is whether Plaintiff's complaint adequately alleges facts that give rise to an inference of discrimination.  *See* ECF No. 16-1 at 10–15.  Here, Plaintiff has alleged that out of more than one hundred employees in the OEC's fiscal division, he was the only African American male.  Compl. ¶ 7.  He has further alleged that he applied for the vacant fiscal administrative manager position in mid to late 2019.  *Id.* ¶ 17.  He was then informed that he did not receive the promotion but that Poulin, a white woman, did.  *Id.* ¶ 21.  Plaintiff further alleges that he had experience as a fiscal administrative supervisor, while Poulin was only an associate fiscal administrative officer.  *Id.* ¶ 19.  Plaintiff asserts this difference in experience made Poulin less qualified for the position than he was.  Plaintiff further alleges the discriminatory animus in Defendants' actions is made clear by their adjustment of the initial requirements to apply for the fiscal administrative manager position.  *Id.* ¶ 19.  Initially, the requirements for the position were such that Poulin did not possess the prerequisite credentials to apply for the promotion, while Plaintiff did.  *Id.* ¶ 18.  Subsequently, the job requirements were altered such that Poulin became eligible to apply.  *Id.* ¶ 19.

Considering these allegations together, Plaintiff has met his initial burden of alleging facts that adequately state a claim for discrimination based on the failure to promote him.  A plaintiff is required "to allege some facts—not mere conclusions—plausibly suggesting that the decision to pass him over for the promotion was made because of [the] plaintiff's protected status." *Shah v. Tunxis Cmty. Coll.*, No. 3:14-CV-00712 MPS, 2015 WL 4254909, at *3 (D. Conn. July 14, 2015) (cleaned up) (quoting *Hussey v. N.Y. State Dep't of Law/Office of Att'y Gen.*, 933 F. Supp. 2d 399, 407 (E.D.N.Y. 2013).  Allegations that the position was given to a less qualified non-minority applicant, which Plaintiff has included here, can suffice.  *Id.* ("[T]he allegation that the position went to a less qualified nonminority [employee is] sufficient to establish an inference of discrimination for a failure-to-promote claim."); *Keaton v. Conn. Dep't of Rehab. Servs.*, No. 3:16-CV-1810 (MPS), 2018 WL 1245728, at *6 (D. Conn. Mar. 9, 2018) (failure to promote claim was adequately alleged where plaintiff claimed a white woman with less experience and qualifications was promoted instead of black woman with more experience and qualifications).

Moreover, a plaintiff can also allege a "mosaic of intentional discrimination by identifying bits and pieces of evidence that together give rise to an inference of discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) (internal quotation marks omitted).  Along with his allegation that a less qualified non-minority applicant ultimately got the promotion, Plaintiff has identified other "bits and pieces of evidence"—the paucity of other African Americans in his department, the similarity of the races of Bye, Lyddy, and Poulin, and the shifting requirements for the position during the application process—that suffice to establish an inference of discrimination.  Here, Plaintiff has alleged enough facts to survive a motion to dismiss, unlike in the cases relied upon by Defendants.  *See Hussey*, 933 F. Supp. 2d at 407; *Alvarez v. Rosa*, No. 11 Civ. 3818 (KBF), 2012 WL 651630, at *4 (S.D.N.Y. Feb. 28, 2012).  Thus,

Defendants' motion to dismiss as it relates to this claim is DENIED, and this portion of Plaintiff's First Count shall survive.

### 2.   Hostile Work Environment

Plaintiff next alleges that Defendants violated Title VII by subjecting him to a hostile work environment.  In order to successfully plead a claim for hostile work environment, Plaintiff must allege facts demonstrating "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotations omitted).  "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive."  *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014).  Further, the general rule is that the hostile incidents "must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive."  *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002).  Finally, in order to state a claim for hostile work environment, Plaintiff must allege that the hostility occurred because of his race.  *See Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001).  In sum, to determine whether Plaintiff "suffered a hostile work environment, [the Court] must consider the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Littlejohn v. City of New York*, 795 F.3d 297, 321 (2d Cir. 2015).

Plaintiff has failed to adequately allege his hostile work environment claim.  The conduct Plaintiff complains about is the following: Poulin attempted to undermine him through in person

communications as well as emails; she gave him incorrect information and then corrected him when he used the incorrect information; Lyddy told Plaintiff to be less harsh on Poulin; and Bye ultimately informed Plaintiff that Poulin, his former subordinate, would now be his supervisor. Compl. ¶¶ 8, 11, 16, 21, 15. The Second Circuit has been clear that far more abusive conduct than that alleged by Plaintiff falls short of the requirements for a hostile work environment complaint. *See Littlejohn*, 795 F.3d at 321 (allegations that coworkers and supervisors made negative statements about plaintiff, were impatient and used harsh tones, declined to meet with plaintiff, replaced plaintiff at meetings, wrongfully reprimanded plaintiff, and increased plaintiff's schedule did not state a hostile work environment claim); *Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 119 (2d Cir. 2010) (allegations that plaintiff was wrongly excluded from meetings, excessively criticized, had duties arbitrarily imposed outside her normal responsibilities, had books thrown at her, and received rude emails did not establish hostile work environment). Plaintiff's allegations therefore do not suffice to demonstrate a hostile work environment claim.

Even if Plaintiff had established that the acts alleged constitute a hostile work environment, however, he has not alleged that Poulin's actions, which form the primary basis of his hostile work environment claim, were taken because of his race. In fact, Plaintiff specifically alleges that Poulin was resentful of him because she "had applied for the Fiscal Administrative Supervisor's position, to which plaintiff was promoted" and "was resentful that [Plaintiff], rather than she, got the job." Compl. ¶ 9. This is independently fatal to Plaintiff's hostile work environment claim. *See Brown*, 257 F.3d at 252; *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999) ("A plaintiff must also demonstrate that [he] was subjected to the hostility because of [his] membership in a protected class."). Thus, Defendants' motion to dismiss as it relates to Plaintiff's hostile work environment claim is GRANTED, and that portion of Plaintiff's First Count is dismissed.

C.  42 U.S.C. §§ 1981 and 1983[5]

Although the complaint is unclear, Plaintiff has clarified that he is pursuing his claims under 42 U.S.C. §§ 1981 and 1983 against Defendant Bye only, in her individual capacity.  ECF No. 19-1 at 13.

In order to establish a violation of 42 U.S.C. § 1983, a plaintiff must "allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004).  If a plaintiff can demonstrate that a state employee discriminated against him based on a protected characteristic, it is a violation of that plaintiff's right to equal protection under the law.  *Id.*  For employment discrimination cases, "once action under color of state law is established, [Plaintiff's] equal protection claim parallels his Title VII claim.  The elements of one are generally the same as the elements of the other and the two must stand or fall together."  *Id.*  Here, Bye does not contest that by performing her official job duties, she was acting under color of state law.  Thus, the only question remaining for the Court is whether Plaintiff has adequately pleaded the elements of discrimination under Title VII against Bye.  The Court holds that he has not.

Importantly, under § 1981 and § 1983, an individual may not be held liable "merely because he held a high position of authority," or on a theory of vicarious liability, but can be liable only if he was "personally involved in the alleged deprivation."  *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004); *Littlejohn*, 795 F.3d at 314.  Personal

---

[5] Defendants argue that Plaintiff's claim under 42 U.S.C. § 1981 should be dismissed because a plaintiff cannot bring a claim based solely on § 1981.  In opposition to the motion to dismiss, Plaintiff clarifies that his claims under 42 U.S.C. §§ 1981 and 1983 are simply one cause of action to vindicate his federal rights under § 1981 via § 1983.  Such a claim is not only permissible, but in fact the exclusive way for a federal plaintiff to vindicate his rights under § 1981. *See Gilbert v. Dep't of Corr.*, No. 3:10CV1877 JBA, 2014 WL 6471415, at *4 (D. Conn. Nov. 18, 2014).  Thus, the Court will consider Plaintiff's § 1981 via § 1983 claim.

involvement can be shown by, among other things, an individual's direct participation in the alleged constitutional violation; her failure to remedy the wrong after being informed of the violation; her grossly negligent supervision of subordinates who committed the wrongful acts; or her exhibition of deliberate indifference by failing to act on information indicating that the unconstitutional acts were occurring. *Back*, 365 F.3d at 127. A plaintiff must also allege facts sufficient to show that the "supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation," and that the behavior constituted intentional discrimination on the basis of a protected characteristic. *Raspardo*, 770 F.3d at 116.

In the instant case, Plaintiff has made a single non-conclusory allegation against Bye: that she called him to inform him that Poulin, not him, would be getting the promotion. Compl. ¶ 21. Plaintiff does not allege that Bye participated in the decision regarding who to promote or that Bye preferred Poulin over him for any reason, let alone a prohibited one. Simply alleging, in an altogether conclusory fashion, that Bye's acts "were discriminatory and harrasive in nature in that, but for plaintiff's race and/or color, they would not have occurred," *id.* Second Count ¶ 25, is not enough to state a claim for violation of § 1981 via § 1983. Nor is Plaintiff's similarly conclusory allegation that the "manipulation" of the requisite qualifications for the promotion occurred "under the auspices of Commissioner Bye" sufficient to establish her personal involvement in the alleged constitutional violation. *See Littlejohn*, 795 F.3d at 314 (dismissing claims under §§ 1981 and 1983 where plaintiff had not alleged that supervisor was personally involved in the allegedly discriminatory actions that took place). Accordingly, Defendants' motion to dismiss as it relates to Plaintiff's claim under 42 U.S.C. §§ 1981 and 1983 is GRANTED, and Plaintiff's Second Count is dismissed.

D.      Plaintiff's Claims under CFEPA

Plaintiff alleges claims under Connecticut General Statutes §§ 46A-60(a)1 and 4.  *See* Compl. Count Three.  As noted by Defendants, the references to §§ 46A-60(a)1 and 4 appear to be typographical errors, as Connecticut General Statute § 46a-60(a)1 presently provides the definition of the word "pregnancy," and there is currently no subsection 4.  Section 46a-60(a) was amended effective October 1, 2017; since that date, it has contained definitions for the surrounding statutory provisions.  The substantive anti-discrimination provisions now appear in Connecticut General Statutes § 46a-60(b).  The Court therefore assumes Plaintiff was attempting to allege claims under Connecticut General Statutes §§ 46a-60(b)(1) and (4).[6]  Section 46a-60(b) of CFEPA provides:  "It shall be a discriminatory practice in violation of this section:  (1) For an employer . . . to refuse to hire or employ . . . or to discriminate against [an] individual in compensation or in terms, conditions, or privileges of employment because of the individual's race, color . . . age, [and other protected characteristics]; [or] . . . (4) For any person . . . to discharge, expel or otherwise discriminate against any person because such person has opposed any discriminatory employment practice or because such person has filed a complaint or testified or assisted in [various proceedings]."  Assuming these are the statutes Plaintiff intended to cite, the Court now turns to an examination of Plaintiff's claims.

Initially, Defendants argue that all individual liability claims against Bye must be dismissed because CFEPA does not allow for individual liability.  Defendants are partially correct, as Connecticut General Statute § 46a-60(b)(1) does not allow for individual liability.  *See Watson v. Wheeler Clinic, Inc.*, No. 3:21-CV-0503 (MPS), 2022 WL 2916825, at *7 (D. Conn. July 25,

---

[6] Plaintiff has not made any arguments in opposition to Defendants' motion to dismiss the CFEPA claims.  The Court could thus deem any arguments in opposition to dismissal waived.  In the interests of completeness, however, and anticipating that Plaintiff will likely file an amended complaint, the Court addresses these claims.

2022); *Perodeau v. City of Hartford*, 259 Conn. 729, 743–44 (2002) (holding that there is no individual liability under the earlier version of CFEPA's anti-discrimination provisions, § 46a-60(a)(1)). Thus, Plaintiff's claim against Bye under this provision cannot survive. Connecticut General Statute § 46a-60(b)(4), however, does allow for individual liability. *See Ahmad v. Yellow Cab Co. of New London & Groton*, 49 F. Supp. 3d 178, 187 (D. Conn. 2014) (addressing earlier version of the statute, § 46a-60(a)(4)). Thus, the Court first examines Bye's individual liability under § 46a-60(b)(4) before turning to OEC's institutional liability.

### 1.  *Bye's Individual Liability under CFEPA*

Connecticut General Statute § 46a-60(b)(4) makes it unlawful for any person to "discharge, expel or otherwise discriminate against any person because such person has opposed any discriminatory employment practice or because such person has filed a complaint." The analysis of retaliation claims under CFEPA is "the same as under Title VII." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 556 (2d Cir. 2010) (citing *Craine v. Trinity Coll.*, 259 Conn. 625, 637 n.6 (2002)). Specifically, Plaintiff must plead "(1) that [he] participated in an activity protected by Title VII, (2) that [his] participation was known to [his] employer, (3) that [his] employer thereafter subjected [him] to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action." *Id.* at 552.[7]

Here, Plaintiff has not satisfied these elements. The only allegation dealing with any potentially protected activity is that, on rare occasions, Plaintiff confronted Poulin about her attitude. Compl. ¶ 16. "[P]rotected activity refers to action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000).

---

[7] Connecticut courts also look to federal law in determining whether a plaintiff has successfully proven his case. *Phadnis v. Great Expression Dental Ctrs. of Conn., P.C.*, 153 A.3d 687, 698 (Conn. App. 2017) (analyzing federal law to determine whether plaintiff met her burden to show retaliation claim).

Confronting a subordinate about her attitude is not akin to opposing statutorily prohibited discrimination. *See Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990) ("In addition to protecting the filing of formal charges of discrimination, [Title VII's] opposition clause protects as well informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges"). Plaintiff has not alleged that he engaged in any activity to protest or oppose statutorily prohibited discrimination, so his § 46a-60(b)(4) claim must fail.

Further, even if confronting Poulin about her attitude were protected activity, there is no allegation that any materially adverse employment action was taken as a result. To show a materially adverse employment action for a retaliation claim, a plaintiff must demonstrate that he suffered "a materially adverse change in the terms and conditions of employment." *Torres v. Pisano*, 116 F.3d 625, 640 (2d Cir. 1997). The "reprimand" Plaintiff received for being "too hard on" Poulin is not a materially adverse employment action. Compl. ¶ 16.

Finally, even if the reprimand was a materially adverse employment action, there is no allegation that Bye was aware that any of these events happened at all. Without alleging some amount of personal involvement on behalf of Bye, the CFEPA claim against her cannot proceed. For each of the aforementioned reasons, Plaintiff's complaint fails to state a claim against Bye under the CFEPA and Defendants' motion to dismiss her from Plaintiff's Third Count is granted.

## 2. *OEC's Liability under CFEPA*

Moving forward, before it can address the merits of Plaintiff's claim against OEC under the CFEPA, the Court must determine whether sovereign immunity prevents such a claim altogether. The Eleventh Amendment of the United States Constitution states: "The judicial power

of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const. amend. XI.  While the Eleventh Amendment does not expressly provide that citizens of one state cannot sue their own state, the Supreme Court has held that a state that refuses to consent to suit is immune from suit brought in federal courts "by her own citizens as well as by citizens of another state." *Emps. of Dep't of Pub. Health & Welfare, Mo. v. Dep't of Pub. Health & Welfare, Mo.*, 411 U.S. 279, 280 (1973).  This principle also applies to state agencies. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  As OEC is a state agency, it is immune to Plaintiff's CFEPA suit by operation of the Eleventh Amendment unless an exception to sovereign immunity applies.  Such immunity likely deprives the Court of subject matter jurisdiction. *See supra* note 1.

There are three recognized exceptions to Eleventh Amendment immunity: (1) when a state consents to a lawsuit; (2) when Congress revokes a state's Eleventh Amendment immunity under the enforcement provision of the Fourteenth Amendment, *Tonina v. Conn. Dep't of Revenue Servs.*, 851 F. App'x 273, 274 (2d Cir. 2021) (summary order); or (3) when the lawsuit requests declaratory or injunctive relief "challenging the constitutionality of a state official's actions in enforcing state law," otherwise known as the *Ex parte Young* exception. *W. Mohegan Tribe & Nation v. Orange Cnty.*, 395 F.3d 18, 21 (2d Cir. 2004) (citing *Ex parte Young*, 209 U.S. 123 (1908)); *Am. Rock Salt Co., LLC v. Wilson*, No. 3:15-cv-1848 (MPS), 2017 WL 1243132 at *3 (D. Conn. Jan. 6, 2017) (citations omitted).  Because a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists, Plaintiff has the burden of proving that one or more of these exceptions applies. *Am. Rock Salt Co, LLC*, 2017 WL 1243142 at *3; *MMA Consultants 1, Inc.*, 245 F. Supp. 3d at 497–98.

In opposition to Defendants' motion to dismiss, Plaintiff makes no argument that his claims are not barred by sovereign immunity. Perhaps this is because he cannot, as it is well-established that such claims against a state agency are, in fact, barred by sovereign immunity. *See Owoeye v. Connecticut*, No. 3:14-CV-0664 (VLB), 2016 WL 1089179, at *4 (D. Conn. Mar. 18, 2016) (dismissing CFEPA claims against state agency based on sovereign immunity); *Camblard v. Conn. Dep't of Child. & Fams.*, No. 3:09-CV-0985 JCH, 2011 WL 3163581, at *3 (D. Conn. July 26, 2011) (same); *Walker v. Connecticut*, 106 F. Supp. 2d 364, 370 (D. Conn. 2000) (same). Thus, Defendants' motion to dismiss as it pertains to Plaintiff's CFEPA claim is granted and Plaintiff's Third Count is DIMMISSED in full.

E. Plaintiff's Claims under the ADEA[8]

Finally, the Court arrives at Plaintiff's last claim, alleging age discrimination under the ADEA. The Court must first examine whether such a claim is barred by sovereign immunity.

Plaintiff has addressed the issue of sovereign immunity in his opposition only by stating he should be permitted to amend pursuant to the doctrine of *Ex parte Young*. Under that doctrine, a plaintiff suing for declaratory or injunctive relief may, under limited circumstances, "avoid the Eleventh Amendment bar to suit and proceed against individual state officers . . . in their official capacities." *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007); *see Nat'l Ass'n for Advancement of Colored People v. Merrill*, 939 F.3d 470, 475–76 (2d Cir. 2019) (discussing *Ex parte Young* with respect to both declaratory and injunctive relief). In determining whether the *Ex parte Young* doctrine applies, a court "need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized

---

[8] While it is once again unclear against which Defendant or Defendants the ADEA claims are directed, the Court will examine this claim only against OEC because the ADEA precludes individual liability. *Malcolm v. Ass'n of Supervisors & Adm'rs of Rochester*, 831 F. App'x 1, 4 (2d Cir. 2020) (summary order).

as prospective.'"  *See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002).

Plaintiff does not argue that there is an ongoing violation of federal law that might entitle him to

declaratory or injunctive relief here, so *Ex parte Young* cannot save his ADEA claim.

It is further clear that neither of the other two exceptions to sovereign immunity apply.

While Congress attempted to abrogate the states' sovereign immunity under the ADEA,  the United

States Supreme Court unequivocally held that such abrogation was invalid as it was not done

pursuant to section five of the Fourteenth Amendment.  *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62,

91 (2000) ("The ADEA's purported abrogation of the States' sovereign immunity is accordingly

invalid.").  Thus, Plaintiff cannot avail himself of that exception.

Finally, Plaintiff has presented no evidence, and the Court has found none, that the state of

Connecticut has consented to suit under the ADEA.  In fact, several other courts in this district

have held just the opposite.  *See, e.g.*, *Tomasko v. W. Conn. State Univ.*, No. 3:11CV1019 JBA,

2012 WL 3062156, at *2 (D. Conn. July 26, 2012) ("Here, the State of Connecticut has not waived

its sovereign immunity and consented to suit in federal court under either the ADEA or the

ADA."); *Cooper v. State of Conn. Pub. Def.'s Off.*, No. 3:03CV2259 (DJS), 2005 WL 589323, at

*2 (D. Conn. Mar. 11, 2005) (same).  Thus, Defendants' motion to dismiss as it relates to Plaintiff's

ADEA claim is GRANTED, and Plaintiff's Fourth Count is dismissed.

## IV.   CONCLUSION

For the reasons discussed herein, Defendants' motion to dismiss is GRANTED in part and

DENIED in part.

Defendants' motion as it relates to Plaintiff's claims in his First, Second, Third, and Fourth

Counts under Title VII for hostile work environment, 42 U.S.C. §§ 1981 and 1983, CFEPA, and

the ADEA, respectively, is GRANTED and those claims are dismissed against both OEC and Bye. The Clerk is directed to terminate Bye as a Defendant in this case.

Defendants' motion as it relates is Plaintiff's First Count under Title VII for failure to promote is DENIED.

Should Plaintiff seek to amend his complaint, any motion seeking to do so shall be filed by November 1, 2022. Such motion shall be governed by the standards set forth in Federal Rule of Civil Procedure 15, notwithstanding any contrary indication in the Court's Scheduling Order. Any motion to amend filed after this deadline shall be governed by the standards set out in Federal Rule of Civil Procedure 16(b).

**SO ORDERED** at Hartford, Connecticut, this 11th day of October, 2022.

*/s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE