UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GERALD MALLISON,<br>    *Plaintiff*,<br><br>v.<br><br>CONNECTICUT OFFICE OF EARLY<br>CHILDHOOD and COMMISSIONER<br>BETH BYE in her individual capacity,<br>    *Defendants*. | 3:21-CV-1641-SVN<br><br><br><br><br>February 21, 2023 |

**RULING AND ORDER ON DEFENDANTS' SECOND MOTION TO DISMISS**

Sarala V. Nagala, United States District Judge.

In this employment discrimination action, Plaintiff Gerald Mallison alleges that the Connecticut Office of Early Childhood ("OEC") and its commissioner, Beth Bye (collectively "Defendants") violated federal and state law by discriminating against him on the basis of his race. The Court previously dismissed many of Plaintiff's claims, *see* ECF No. 32. Although the Court's Order at ECF No. 32 directed Plaintiff to file a motion for leave to amend his complaint if he desired to do so, *see id.* at 1, 23, he disregarded the Court's instructions and instead simply filed an amended complaint, *see* ECF No. 33. Defendants have now moved to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

For the reasons described below, the Court grants Defendants' motion to dismiss as to Counts Two, Three and Four of Plaintiff's amended complaint. As to Count One, Plaintiff has clarified that he is claiming only that Defendant OEC unlawfully failed to promote him, and has abandoned his hostile work environment theory under this Count. Because Defendants do not challenge that Plaintiff can proceed with his failure to promote claim, that claim—and that claim alone—proceeds.

I.      **FACTUAL BACKGROUND**[1]

The following facts, taken from the amended complaint, are presumed to be true for the purposes of the present motion to dismiss.[2] Plaintiff is an African American male who was hired in September of 2013 as an accounts examiner at the Connecticut Department of Social Services, Office of Quality Assurance, in the division of Internal Audit. Am. Compl., ECF No. 33, ¶¶ 3, 6. In June of 2018, Plaintiff was promoted to the position of Fiscal Administrative Supervisor ("FAS") at OEC. *Id.* ¶ 7. Despite OEC employing more than one hundred employees in its fiscal division, Plaintiff is the only African American male. *Id.*

Almost immediately after his arrival at OEC, Plaintiff began to experience hostility from one of his direct subordinates, Sarah Poulin. *Id.* ¶ 8. Poulin is a white female who was resentful of Plaintiff because she, too, had applied for the FAS role, but had been passed over when the position was given to Plaintiff. *Id.* ¶¶ 8, 9. As a result, although she was supposed to be providing support and administrative assistance to Plaintiff, Poulin instead attempted to undermine him at every turn. *Id.* ¶ 10. At one point, Poulin even told Plaintiff that it was in her best interest if he were to fail. *Id.* As time passed, Poulin's dislike for Plaintiff became more and more pronounced in both her email and in-person communications. *Id.* ¶ 11. For example, Poulin provided Plaintiff false financial information, only to correct that very information during meetings in an effort to

---

[1] Had Plaintiff followed the Court's instructions regarding the filing of a motion for leave to amend his complaint, he would have been required to file a redlined version of the complaint to highlight the differences between the original complaint and the amended complaint. *See* D. Conn. Local Rule 7(f)(2) (providing that, "in cases in which the movant is represented by counsel," the motion to amend shall "be accompanied by both a redlined version of the proposed amended pleading showing the changes proposed against the current pleading and a clean version of the proposed amended pleading"). Because Plaintiff failed to follow the Court's instructions, the Court is left to manually compare his original complaint to his amended complaint to determine the differences.

[2] Where a defendant moves to dismiss under either Rule 12(b)(1) or Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept all factual allegations in the complaint as true, and draw inferences from those allegations in the light most favorable to the plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006).

2

make Plaintiff look bad. *Id.* Eventually, Plaintiff made the decision to avoid Poulin altogether in an effort to prevent her from sabotaging his career. *Id.*

In October of 2018, a fiscal administrative manager at OEC was terminated. *Id.* ¶ 12. At that time, Plaintiff was asked to take on the responsibilities of that position, in addition to the responsibilities of the fiscal administrative supervisor role that he already held. *Id.* In January of 2019, Defendant Bye, a white woman, was hired to be the Commissioner of OEC. *Id.* ¶ 13. In February of 2019, Plaintiff suffered a broken ankle and was forced to miss approximately four weeks of work. *Id.* ¶ 14. During this time that Plaintiff was absent from work, Poulin attempted to "plant seeds of distrust and discord" in the minds of Bye and Plaintiff's direct supervisor, Chris Lyddy, who was Bye's Chief Operating Officer. *Id.* Upon Plaintiff's return to the office, Poulin's actions got progressively worse, including the sending of emails Plaintiff characterizes as containing "anger, hostility, and unmitigated discriminatory animus." *Id.* ¶ 15.[3] Eventually, Poulin created such a negative environment for Plaintiff that he concluded he simply could not continue to communicate with her. *Id.* On certain rare occasions, Plaintiff confronted Poulin about her "disrespectful, discriminatory, and confrontational attitude." *Id.* ¶ 16.[4] When he did this, Lyddy told Plaintiff to stop being so hard on Poulin. *Id.*

In June of 2019, OEC began searching for someone to fill the vacant fiscal administrative manager position, which Plaintiff had been unofficially performing for months. *Id.* ¶ 17. The original job posting contained the qualifications required to apply for the position. *Id.* ¶ 18. According to the amended complaint, it quickly became clear that some interested parties,

---

[3] The word "discriminatory" in the quoted phrase did not appear in Plaintiff's original complaint, but appears in his amended complaint. *Compare* ECF No. 1 at ¶ 15 *with* ECF No. 33 at ¶ 15.

[4] Again, as with paragraph 16, Plaintiff has added the word "discriminatory" to the quoted phrase in his amended complaint, but has not otherwise changed the language of this paragraph between his original and amended complaint. *Compare* ECF No. 1 at ¶ 16 *with* ECF No. 33 at ¶ 16.

specifically Poulin, did not meet those requirements. *Id.* The necessary qualifications to apply for the position were subsequently reduced, clearing the way for other applicants, including Poulin. *Id.* ¶ 19. OEC also removed the preliminary step of making sure the applications submitted in fact met the minimum qualifications required for the position. *Id.*

In February of 2020, Lyddy began conducting interviews for the fiscal administrative manager position. *Id.* ¶ 20. Despite having more than twenty years of fiscal administrative experience, and despite having worked as the acting fiscal administrative manager for nearly a year and a half at that point, Plaintiff failed to advance past the first round of interviews. *Id.* In May of 2020, Bye informed Plaintiff that not only had he been denied the position, but that Poulin, his former direct report, had been awarded the position and would be his new supervisor. *Id.* ¶ 22. Plaintiff subsequently learned that Lyddy had told the panel conducting the interviews that Plaintiff had "misrepresented" his qualifications and work experience during the interview. *Id.* ¶ 21.

Plaintiff believes that, by failing to promote him, Defendants have discriminated against him based on his race, in violation of federal and state law.

## II. LEGAL STANDARDS GOVERNING DISMISSAL UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)

### A. Federal Rule of Civil Procedure 12(b)(1)

Pursuant to Federal Rule of Civil Procedure 12(b)(1), defendants may move to dismiss a case for lack of subject matter jurisdiction. A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Because the Eleventh Amendment "restricts the judicial power under Article III," *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 72–73 (1996), a motion to dismiss on the basis of sovereign immunity under

4

the Eleventh Amendment is properly brought under Rule 12(b)(1), *Long Island Pure Water Ltd. v. Cuomo*, 375 F. Supp. 3d 209, 215 (E.D.N.Y. 2019).[5]

Although it is usually the plaintiff's burden to prove subject matter jurisdiction, "where a defendant official or governmental entity asserts the Eleventh Amendment as the basis of [a] 12(b)(1) motion, the burden falls to that entity" to establish that it is an arm of the state such that it may be entitled to sovereign immunity. *See Perez v. Conn. Dep't of Corr. Parole Div.*, No. 3:13-CV-150 JCH, 2013 WL 4760955, at *2 (D. Conn. Sept. 4, 2013) (citing *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 239 (2d Cir. 2006)). Still, consistent with a plaintiff's ultimate burden of establishing subject matter jurisdiction, once an entity has shown that it is an arm of the state, the plaintiff bears the burden of establishing that an exception to sovereign immunity applies. *See MMA Consultants 1, Inc. v. Republic of Peru*, 245 F. Supp. 3d 486, 497–98 (S.D.N.Y.), *aff'd*, 719 F. App'x 47 (2d Cir. 2017) ("The ultimate 'burden of proving subject matter jurisdiction by a preponderance of the evidence' lies with the plaintiff.") (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)).

Here, the parties do not dispute that OEC is an arm of the state. Accordingly, in discussing whether sovereign immunity bars any of Plaintiff's claims in the amended complaint, the Court will examine whether Plaintiff has met his burden of proving that any exception to Eleventh Amendment sovereign immunity applies.

---

[5] Neither the Second Circuit nor the Supreme Court has definitively determined whether the Eleventh Amendment is to be understood as a bar to subject matter jurisdiction or is "more appropriately viewed as an affirmative defense." *Ripa v. Stony Brook Univ.*, 808 F. App'x 50, 50 n. 1 (2d Cir. 2020). *See also Aldridge v. Lamont*, No. 3:20-cv-924 (KAD), 2020 WL 7773415, at *4, n. 6 (D. Conn. Dec. 30, 2020). While the Court believes that the opening phrase of the Eleventh Amendment, which provides that the "judicial power of the United States shall not be construed to extend" to certain suits, suggests that the Amendment limits the subject matter jurisdiction of the Court, it need not and does not decide this question here. Regardless of which view of the Eleventh Amendment applies, certain of Plaintiff's claims are barred under it.

### B. Federal Rule of Civil Procedure 12(b)(6)

When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.* In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).

However, the Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678. Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### III. DISCUSSION

In their motion to dismiss the amended complaint, Defendants assert various arguments why they believe Counts Two, Three, and Four should be dismissed in full, and why certain aspects

6

of Count One, to the extent Plaintiff is still asserting them, should be dismissed. The Court addresses each Count in turn.

### A. Count One: Title VII

In Count One, Plaintiff asserts a violation of 42 U.S.C. § 2000e, *et seq.*, known as Title VII, for race discrimination. Neither Plaintiff's original complaint nor his amended complaint specifies against which Defendant(s) Count One is alleged. In its earlier decision, the Court noted that, because Title VII does not provide for individual liability, Count One would be construed as being alleged against Defendant OEC only. *See* ECF No. 32 at 10, n.4. Plaintiff now concedes that that he cannot proceed under Title VII against Defendant Bye, so Count One will again be construed as being alleged against Defendant OEC only. Additionally, Plaintiff states that he is no longer attempting to state a claim for hostile work environment under Title VII.[6] Therefore, what remains of Count One is a failure to promote claim under Title VII brought against OEC only. As Defendants make no argument that this claim cannot proceed, it shall continue.

### B. Count Two: Sections 1981 and 1983

In Count Two, Plaintiff has alleged that Defendant Bye, in her individual capacity, violated 42 U.S.C. §§ 1981 and 1983 by unlawfully discriminating against him on the basis of his race. Although the amended complaint does not contain these words, his claim sounds in equal protection principles. Defendants argue that Plaintiff has not sufficiently pleaded personal involvement of or purposeful discrimination by Defendant Bye to sustain a claim under Sections 1981 and 1983. The Court agrees.

---

[6] Where the original complaint used the phrase "hostile work environment," the amended complaint now says "harassive and discriminatory environment." *Compare* ECF No. 1 ¶ 23 *with* ECF No. 33 ¶ 23. As Plaintiff's briefing on the present motion concedes he is not attempting to state a hostile work environment claim, the Court accepts this representation that the new language is not meant to masquerade as a hostile work environment claim.

7

To establish a claim under 42 U.S.C. § 1981, a plaintiff must allege facts supporting the following elements: (1) the plaintiff is a member of a racial minority; (2) the defendant intended to discriminate on the basis of race; and (3) the discrimination concerned one of the statute's enumerated activities. *Brown v. City of Oneonta, N.Y.*, 221 F.3d 329, 339 (2d Cir. 2000); *see also Patterson v. Cnty. Of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004) (a plaintiff "pursuing a claimed violation of § 1981 or a denial of equal protection under § 1983 must show that the discrimination was intentional"). Discrimination in employment falls within the scope of Section 1981. *See id.*

Additionally, as the Court noted in its earlier ruling, an individual may not be held liable under § 1981 and § 1983 "merely because [s]he held a high position of authority," or on a theory of vicarious liability, but can be liable only if she was "personally involved in the alleged deprivation." *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004); *Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015). Traditionally, personal involvement of a supervisor could be shown by, among other things, the individual's direct participation in the alleged constitutional violation; her failure to remedy the wrong after being informed of the violation; her grossly negligent supervision of subordinates who committed the wrongful acts; or her exhibition of deliberate indifference by failing to act on information indicating that the unconstitutional acts were occurring. *Back*, 365 F.3d at 127. More recently, however, the Second Circuit made clear that "there is no special rule for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Instead, a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has

8

violated the Constitution." *Id.* Thus, Plaintiff's amended complaint must show that Defendant Bye personally participated in the alleged constitutional violation.[7]

Plaintiff's amended complaint fares no better on this front than his original complaint did. Plaintiff's theory of direct involvement by Defendant Bye in Count Two appears to rest primarily on her alleged participation in the final round of interviews during which Poulin was selected for the position, in selecting Poulin, and in calling Plaintiff to inform him that he was not selected. Am. Compl., Second Count, ¶¶ 21–30.[8]  To begin, Count Two of the amended complaint incorporates only paragraphs one through twenty of Count One. *See* ECF No. 33 at 6, ¶ "1–20." Therefore, as a technical matter, the paragraph of the amended complaint in which Plaintiff describes Defendant Bye's call to inform him he had not received the position is not incorporated into Count Two.

Plaintiff's argument that Bye was personally involved in discrimination against Plaintiff because she participated in the final round of interviews fails, as Plaintiff was not interviewed in the final round. Plaintiff alleges no facts suggesting Bye was involved in the decision not to advance him to the final round.

With respect to Bye's ultimate decision to hire Poulin over Plaintiff, Plaintiff has alleged no facts from which the Court could infer that Bye acted pursuant to a discriminatory motive.

---

[7] In its prior opinion, the Court did not expressly recognize that *Tangreti* made clear the four methods of proving supervisory liability in *Back* were no longer available to Plaintiff as methods to prove personal involvement. ECF No. 32 at 15–16. *See Peck v. Cnty. of Onondaga, New York*, No. 5:21-CV-651, 2021 WL 3710546, at *10 (N.D.N.Y. Aug. 20, 2021), *reconsideration denied*, 563 F. Supp. 3d 18 (N.D.N.Y. 2021) (applying *Tangreti* to Section 1983 claims brought in public employment context); *Ramirez v. Town of Oxford*, No. 3:21-cv-240 (JAM), 2021 WL 5889161, at *5 (D. Conn. Dec. 13, 2021) (same). Nevertheless, as Plaintiff's original complaint made no attempt to avail himself of any methods other than direct participation, the Court's analysis in the prior decision is not affected by this oversight.

[8] Plaintiff's allegations that he informed Bye of Poulin's efforts to "undermin[e] and harass[] him in the workplace," Am. Compl. Second Count, ¶¶ 24–25, and that her refusal to acknowledge Plaintiff's concerns constituted deliberate indifference toward his rights and negligent supervision, are conclusory. Moreover, as discussed above, theories of deliberate indifference and negligent supervision are no longer sufficient to state a claim for supervisory liability, under *Tangreti*. *See Peck*, 2021 WL 3710546, at *10 (recognizing that those theories are no longer viable after *Tangreti*).

Simply alleging, in an altogether conclusory fashion, that Bye's acts "were discriminatory and harrasive in nature in that, but for plaintiff's race and/or color, they would not have occurred," *id.* Second Count ¶ 25, is not enough to state a claim for violation of § 1981 via § 1983.  Nor is Plaintiff's similarly conclusory allegation that the "manipulation" of the requisite qualifications for the promotion occurred "under the auspices of Commissioner Bye" sufficient to establish her personal involvement in the alleged constitutional violation.  *See Littlejohn*, 795 F.3d at 314 (dismissing claims under §§ 1981 and 1983 where plaintiff had not alleged that supervisor was personally involved in the allegedly discriminatory actions that took place).

Moreover, Plaintiff fails to address Defendant's argument that he has not alleged facts raising a plausible inference that Defendant Bye *intended* to discriminate against him on the basis of his race, as is required for a Section 1981 via Section 1983 claim.  *See Brown*, 221 F.3d at 339.  The Court therefore deems this argument conceded.  Even if it were not conceded, however, Plaintiff's allegations boil down to the fact that Plaintiff, the only African-American in his department, was not promoted.  Such allegations are insufficient to state a plausible claim that Defendant Bye directly participated in a constitutional violation against Plaintiff with intent to discriminate against him.

Accordingly, Defendants' motion to dismiss as it relates to Plaintiff's claim under 42 U.S.C. §§ 1981 and 1983 is GRANTED, and Plaintiff's Second Count is dismissed.

        C.      <u>Plaintiff's Claims under CFEPA</u>

Plaintiff next alleges claims under Connecticut General Statutes §§ 46a-60(b)(1) and (4). Section 46a-60(b) of CFEPA provides:  "It shall be a discriminatory practice in violation of this section:  (1) For an employer . . . to refuse to hire or employ . . . or to discriminate against [an] individual in compensation or in terms, conditions, or privileges of employment because of the

individual's race, color . . . age, [and other protected characteristics]; [or] . . . (4) For any person . . . to discharge, expel or otherwise discriminate against any person because such person has opposed any discriminatory employment practice or because such person has filed a complaint or testified or assisted in [various proceedings]." Through Plaintiff's opposition to the present motion to dismiss, it has become clear that the amended complaint purports to allege a claim under section 46a-60(b)(4) against Defendant Bye in Count Three, and a claim under section 46a-60(b)(1) against OEC in Count Four. ECF No. 35-1 at 9–11. The Court first examines Bye's individual liability under § 46a-60(b)(4) before turning to OEC's liability.

### 1. Count Three: Bye's Individual Liability under Section 46a-60(b)(4)

Connecticut General Statute § 46a-60(b)(4) makes it unlawful for any person to "discharge, expel or otherwise discriminate against any person because such person has opposed any discriminatory employment practice or because such person has filed a complaint." This section relates to retaliation, and analysis of retaliation claims under CFEPA is "the same as under Title VII." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 556 (2d Cir. 2010) (citing *Craine v. Trinity Coll.*, 259 Conn. 625, 637 n.6 (2002)).[9] As a threshold matter, the Court must examine whether Plaintiff adequately presented his claim for retaliation in his administrative complaint filed with the Connecticut Commission on Human Rights and Opportunities ("CHRO").

Neither party disputes that a plaintiff seeking to bring claims under CFEPA "must exhaust [their] administrative remedies through the . . . CHRO." *Soules v. Connecticut, Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 57 (2d Cir. 2018). Even where a claim was not specifically asserted before the CHRO, though, a plaintiff may still be able to bring an action in

---

[9] Connecticut courts also look to federal law in determining whether a plaintiff has successfully proven his case. *Phadnis v. Great Expression Dental Ctrs. of Conn., P.C.*, 153 A.3d 687, 698 (Conn. App. 2017) (analyzing federal law to determine whether plaintiff met her burden to show retaliation claim).

11

federal court if the conduct complained of in the federal court complaint is "reasonably related" to the conduct complained of before the CHRO. *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 614 (2d Cir. 1999). A claim is reasonably related to the complaint before the CHRO "if: [1] the claim would fall within the reasonably expected scope of a[] [CHRO] investigation of the charges of discrimination; [2] it alleges retaliation for filing the [CHRO] charge; or [3] the plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the [CHRO] charge." *Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir. 2002) (internal quotation marks and citation omitted); *see also Soules*, 882 F.3d at 57.

In his opposition to Defendants' motion, Plaintiff concedes that his CHRO charge does not expressly set forth retaliation as a claim. ECF No. 35-1 at 12. Further, he does not argue the retaliation relates to the filing of his CHRO charge, or that any incidents of discrimination occurred after the CHRO charge was filed. Instead, Plaintiff appears to argue that his claim for retaliation would have fallen within the reasonably expected scope of the CHRO investigation. *Id*. at 13–14. Specifically, Plaintiff argues that paragraphs 13, 14, and 19 of the affidavit he submitted in support of his CHRO complaint support his claim for retaliation, and would have reasonably led to the CHRO investigating whether such retaliation took place. The Court disagrees.

The referenced paragraphs of Plaintiff's complaint affidavit before the CHRO state that Plaintiff was the subject of "anger, hostility, and unmitigated animus" from Poulin, which fostered a hostile work environment. ECF No. 34-2 at 8. When Plaintiff did confront Poulin about her attitude, he was reprimanded by Lyddy for his actions. *Id.* From these allegations, Plaintiff contends that "it is logical to conclude that any investigation by CHRO of Mallison's claims of discrimination by management would also include his being reprimanded for complaining or opposing Poulin's discriminatory conduct exhibited towards him in the workplace." ECF No. 35-

1 at 14. Even if the Court were convinced that such a conclusion is logical (and it is certainly convinced of no such thing), the retaliation claim in Plaintiff's complaint is directed at Defendant Bye, and neither of the two paragraphs cited from Plaintiff's CHRO complaint affidavit have anything to do with Defendant Bye. The only information Plaintiff points to from his CHRO complaint affidavit regarding Defendant Bye is that she informed him that he had not received the promotion he sought. ECF No. 34-2 at 9. This allegation says nothing about the newly-advanced purported retaliatory motivation for this decision. Nor does the CHRO complaint suggest that Defendant Bye was even aware of any of the conduct complained of within that complaint.

It is clear to this Court that any investigation resulting from the CHRO complaint would not have included an investigation for retaliation and this claim in Plaintiff's amended complaint in the present action is therefore unexhausted. *See Zawacki v. Realogy Corp.*, 628 F. Supp. 2d 274, 284 (D. Conn. 2009) (holding retaliation claim unexhausted where CHRO charge laid out only a claim for discrimination and did not include information sufficient to conclude an investigation would have included a claim for retaliation).[10] As Plaintiff has failed to exhaust his claim for retaliation against Defendant Bye under the CFEPA, Defendants' motion to dismiss Plaintiff's Third Count is granted.[11]

### 2. Count Four: OEC's Liability under Section 46a-60(b)(1)

Next, before it can address the merits of Plaintiff's claim against OEC under the CFEPA, the Court must determine whether sovereign immunity prevents such a claim altogether. The

---

[10] Further, the idea that a claim is exhausted if the conduct would fall within the scope of an administrative investigation resulting from the CHRO charge is essentially "an allowance of loose pleading upon the recognition that employees frequently file administrative charges without the benefit of counsel." See *Zawacki*, 628 F. Supp. 2d at 284. Where, as here, Plaintiff was represented by counsel when he filed his CHRO complaint, the Court is less inclined to allow such "loose pleading." *Id*.

[11] As Plaintiff's claim against Defendant Bye under CFEPA is unexhausted and must be dismissed the Court need not and does not examine whether Defendant Bye would be entitled to qualified immunity under Conn. Gen. Stat. § 4-165.

13

Eleventh Amendment of the United States Constitution states: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const. amend. XI. While the Eleventh Amendment does not expressly provide that citizens of one state cannot sue their own state, the Supreme Court has held that a state that refuses to consent to suit is immune from suit brought in federal courts "by her own citizens as well as by citizens of another state." *Emps. of Dep't of Pub. Health & Welfare, Mo. v. Dep't of Pub. Health & Welfare, Mo.*, 411 U.S. 279, 280 (1973). This principle also applies to state agencies. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). As OEC is a state agency, it is immune to Plaintiff's CFEPA suit by operation of the Eleventh Amendment unless an exception to sovereign immunity applies. Such immunity likely deprives the Court of subject matter jurisdiction. *See supra* note 1.

There are three recognized exceptions to Eleventh Amendment immunity: (1) when a state consents to a lawsuit; (2) when Congress revokes a state's Eleventh Amendment immunity under the enforcement provision of the Fourteenth Amendment, *Tonina v. Conn. Dep't of Revenue Servs.*, 851 F. App'x 273, 274 (2d Cir. 2021) (summary order); or (3) when the lawsuit requests declaratory or injunctive relief "challenging the constitutionality of a state official's actions in enforcing state law," otherwise known as the *Ex parte Young* exception. *W. Mohegan Tribe & Nation v. Orange Cnty.*, 395 F.3d 18, 21 (2d Cir. 2004) (citing *Ex parte Young*, 209 U.S. 123 (1908)); *Am. Rock Salt Co., LLC v. Wilson*, No. 3:15-cv-1848 (MPS), 2017 WL 1243132 at *3 (D. Conn. Jan. 6, 2017) (citations omitted). Because a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists,

Plaintiff has the burden of proving that one or more of these exceptions applies. *Am. Rock Salt Co, LLC*, 2017 WL 1243142 at *3; *MMA Consultants 1, Inc.*, 245 F. Supp. 3d at 497–98.

In the Court's decision on Defendants' first motion to dismiss, the Court determined that sovereign immunity applied to Plaintiff's CFEPA claim against OEC and dismissed the claim. ECF No. 32 at 19–21. Plaintiff now argues that he "seeks the entry of a permanent injunction and declaratory judgment prohibiting the OCE from further engaging in ongoing discriminatory conduct" and, thus, the *Ex parte Young* exception applies to allow his suit. ECF No. 35-1 at 12. This argument fails for several reasons.

A plaintiff seeking to invoke the exception laid out in *Ex parte Young* must show that he "alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645, (2002). The *Ex parte Young* exception does not allow for federal courts to grant a declaratory judgment declaring that a plaintiff's federal or constitutional rights have been violated in the past. *Green v. Mansour*, 474 U.S. 64, 73 (1985). Moreover, "a plaintiff seeking prospective relief from the state must name as defendant a state official rather than the state or a state agency directly." *Santiago v. New York State Dep't of Corr. Servs.*, 945 F.2d 25, 32 (2d Cir. 1991).

First, Plaintiff seeks this injunction directly against the OEC and not against any individual defendant. This alone defeats his argument that *Ex parte Young* allows the relief sought. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (*Ex parte Young* has "no application in suits against the States and their agencies, which are barred regardless of the relief sought"); *M.M. v. New York State Ct. of Appeals*, No. 21-2924, 2022 WL 1565694, at *2 (2d Cir. May 18, 2022) (summary order) (same); *Palmer v. New York State Off. of Ct. Admin.*, 526 F. App'x 97, 99 (2d Cir. 2013) (summary order) (same).

15

Further, despite his opposition arguing that Plaintiff is requesting an injunction "proscribing the OEC from further engaging in the aforedescribed ongoing discriminatory, disparate and harrassive conduct," Plaintiff alleges no ongoing conduct.  Instead, the entirety of Plaintiff's allegations against OEC under CFEPA are:

> The failure to promote Malison, and instead promote a less qualified, less experienced white of color and Caucasian of race candidate, namely Poulin, *constituted* a flagrant violation of state statutory law, as it *was* blatantly discriminatory and breached Conn. General Statute § 46A-60(b)(1), as well as Connecticut's constitution which guarantees equal protection of all citizens under law.

Am. Compl., Fourth Count (emphases added).  It is clear that this allegation relates to an event that took place in the past, and not ongoing conduct.  Thus, *Ex parte Young* is not applicable to this situation.  *See Blamah v. New York*, No. 7:19-CV-9234 (PMH), 2020 WL 1812690, at *5 (S.D.N.Y. Apr. 8, 2020) (the *Ex parte Young* exception is not available to "a plaintiff who merely asserts she has suffered discrete acts of past discrimination."); *Falcon v. City Univ. of New York*, No. 15-CV-3421 (ADS) (ARL), 2016 WL 3920223, at *9 (E.D.N.Y. July 15, 2016) (same).  At best, Plaintiff is attempting to use his opposition brief to allege that there is some ongoing conduct that continues to violate his rights; this is not allowed.  *Shah v. Helen Hayes Hosp.*, 252 F. App'x 364, 366 (2d Cir. 2007) (summary order) ("a party may not use his or her opposition to a dispositive motion as a means to amend the complaint.").  Once again, this dooms Plaintiff's argument.

If two reasons were not enough, *Ex parte Young* applies only where a Plaintiff alleges ongoing violations of *federal* law.  *Verizon Maryland, Inc.*, 535 U.S. at 645.  Here, Plaintiff claims the *Ex parte Young* doctrine applies to allow injunctive relief against OEC for violations of CFEPA, a state statute.  The Supreme Court and the Second Circuit have been clear that such a claim is not permitted under *Ex parte Young*.  *Pennhurst*, 465 U.S. at 121 ("a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State

that is protected by the Eleventh Amendment."); *Vega v. Semple*, 963 F.3d 259, 284 (2d Cir. 2020) ("To the extent Plaintiffs seek prospective relief against Defendants in their official capacity for violations of the 'Connecticut Constitution' and 'state law,' those claims are indeed barred by the Eleventh Amendment.").

Therefore, despite Plaintiff's protestations, it is not an exaggeration to say that his claim satisfies precisely none of the requirements of the *Ex Parte Young* doctrine. As this is Plaintiff's only argument why his CFEPA claim against OEC in Count Four should not be dismissed, Count Four must be dismissed.

Thus, Defendants' motion to dismiss as it pertains to Plaintiff's CFEPA claims is granted, and Plaintiff's Third and Fourth Counts are DIMISSED.

## IV.   CONCLUSION

For the reasons discussed herein, Defendants' motion to dismiss is GRANTED. Plaintiff's claims in his Second, Third, and Fourth Counts under 42 U.S.C. §§ 1981 and 1983, and the CFEPA are dismissed against both OEC and Bye.

The Clerk is directed to terminate Bye as a Defendant in this case.

**SO ORDERED** at Hartford, Connecticut, this 21st day of February, 2023.

                        /s/ Sarala V. Nagala
                        SARALA V. NAGALA
                        UNITED STATES DISTRICT JUDGE